Michael L. YOUNGBLOOD, Plaintiff,

v.

John E. POTTER, Postmaster General United States Postal Service, National Postal Mail Handlers Union; Local 317, and Jimmy Davis, Defendants.

No. CIV.A.02–A–1398–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 14, 2003.

**1310**

Arlene M. Richardson, T. Allen French, Richardson & French, Hayneville, AL, for Michael L. Youngblood, plaintiff.

R. Randolph Neeley, U.S. Attorney's Office, Montgomery, AL, for John E. Potter, defendant.

John M. West, Bredhoff & Kaiser PLLC, Washington, DC, for Nat. Postal Mail Handlers Union, defendant.

Richard P. Rouco, Whatley Drake, LLC, Birmingham, AL, for Local 317, Jimmy Davis, defendants.

### *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

### *Introduction*

This cause is before the court on a Motion to Dismiss filed on March 12, 2003, by Defendants National Postal Mail Handlers Union ("NPMHU"), National Postal Mail Handlers Union Local 317 ("Local 317"), and Jimmy Davis ("Davis"). Local 317 and Davis have filed answers in this action, and NPMHU, Local 317, and Davis (collectively "the Union Defendants") have asked the court to construe the Motion to Dismiss as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Local 317 and Davis.

Plaintiff Michael L. Youngblood ("Youngblood") filed this civil action in federal court on December 20, 2002. Youngblood brings claims against Defendant John E. Potter, Postmaster General of the United States, for discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and for constructive discharge, retaliation, and racial discrimination in violation of Title VII and 42 U.S.C. §§ 1981, 1983 & 2000e. Youngblood's sole claim against the Union Defendants is for breach of the duty of fair representation.

The Union Defendants' Motion to Dismiss only addresses the breach of the duty of fair representation claim. After a careful and thorough review of the parties' submissions, the court concludes that the Motion to Dismiss is due to be GRANTED.

### *Motion to Dismiss Standard*

■ A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ...

[dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *Jackson v. Birmingham Bd. of Educ.,* 309 F.3d 1333, 1335 (11th Cir.2002). Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

### Judgment on the Pleadings Standard

 Judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Mergens v. Dreyfoos,* 166 F.3d 1114, 1116–17 (11th Cir.1999). The court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* at 1117. If upon reviewing the pleadings it is clear that the nonmoving party would not be entitled to relief upon any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint. *White v. Lemacks,* 183 F.3d 1253, 1255 (11th Cir. 1999).

### Facts

Plaintiff is a black male formerly employed with the United States Postal Service ("Postal Service") as a mail handler at the Montgomery, Alabama, Postal Facility 36119. Plaintiff, a disabled veteran, began his employment with the Postal Service in 1990 and was a member of the NPMHU and Local 317 during the course of his employment. In connection with his prior military service, Plaintiff suffered a knee injury resulting in a seventy percent disability. In January 2000, Plaintiff underwent a total left knee replacement. Plaintiff contends that 38 U.S.C. § 3117[1] obligated the Postal Service to provide him with preferential treatment due to his injury.

In July of 2001, upon orders from Plaintiff's physician, the Postal Service assigned Plaintiff to light duty. Plaintiff requested an assignment to a permanent light duty position on July 26, 2001. According to his Complaint, Plaintiff was "qualified, willing and able to perform the functions of one of the many light duty positions available to mail handlers." Complaint, ¶ 10. The Postal Service denied Plaintiff's request for a permanent light duty position in either June, July, or August of 2001.[2]

On July 11, 2001, Plaintiff submitted a "complaint"[3] to Local 317 and Davis, acting branch president. In his "complaint," Plaintiff alleged that the Postal Service

---

**1.** 38 U.S.C. § 3117 enumerates the benefits to which a veteran with a service-connected disability rated at ten percent or more is entitled.

**2.** The exact date of the denial is not clear from Plaintiff's Complaint. Plaintiff alleges that his first request for permanent light duty was turned down on June 2, 2001, but the Complaint does not specify when Plaintiff filed that request with the Postal Service. *See* Complaint, ¶ 11. In paragraph 17 of the

Complaint, Plaintiff states that he filed another request for permanent light duty on July 26, 2001. According to the Complaint, the Postal Service denied this request on August 23, 2001. Complaint, ¶ 18.

**3.** It appears from the context of Plaintiff's Complaint that this "complaint" was, in fact, a grievance.

assigned "part time" and "non-overtime desired" persons to work overtime while it denied Plaintiff's repeated requests to work overtime. Plaintiff continued to apply for overtime and the Postal Service continued to deny his requests. According to Plaintiff, casual and temporary duty employees performed light duty work that could have been available to Plaintiff as overtime work.

In connection with his "complaint" to Local 317 and Davis, Plaintiff filed a formal grievance with the Postal Service. The first meeting of the grievance process, the Step 1 Meeting, regarding the grievance was held on July 27, 2001. In his grievance, Plaintiff complained that the Postal Service violated Article 8, Sections 8.4 and 8.5d, and Article 13 of the National Agreement.[4] Plaintiff requested that the Postal Service compensate him for any missed opportunity to work overtime and that management stop the practice of automatically excluding light or limited duty personnel from overtime work. Plaintiff also requested that the list of full time employees who wish to volunteer for overtime be established and maintained pursuant to the National Agreement. Plaintiff was not represented by the NPMHU, Local 317, or Davis in connection with his

Step 1 Meeting and with the filing of his grievance. According to the Complaint, the Union Defendants "never acknowledged Plaintiff['s] complaint and said inaction or omission constituted a breach of [the] Union's duty." Complaint, ¶ 55.

On August 23, 2001, the Postal Service notified Plaintiff by letter that he would not be assigned to a permanent light duty position and that the Postal Service could not accommodate Plaintiff's restriction to light duty. Plaintiff alleges that this notification amounted to a constructive discharge "in that he was given no reasonable alternative other than resignation or retirement or termination." Complaint, ¶ 18. On August 30, 2001, the Postal Service officially denied Plaintiff's grievance.

In response to these actions, Plaintiff filed two charges with the Postal Service's Equal Employment Opportunity ("EEO") office.[5] In the first charge, filed on September 5, 2001, Plaintiff alleges that he was denied the opportunity to work overtime due to his race and disability status. Plaintiff filed his second charge on October 3, 2001, alleging that the Postal Service constructively discharged him on account of his race, his disability status, and his filing of his first EEO charge. Plaintiff received his right-to-sue letter on November 20, 2002.

---

4. The National Agreement is the collective bargaining agreement between the Postal Service and the NPMHU. In his Complaint, Plaintiff referenced the National Agreement, see ¶¶ 13, 53, and his grievance, see ¶ 54. Under *Dubisar–Dewberry v. Folmar*, 883 F.Supp. 648, 651 n. 4 (M.D.Ala.1995), the Union Defendants can introduce a copy of the National Agreement and copies of Plaintiff's overtime grievance forms without converting a motion to dismiss into a motion for summary judgment.

Sections 8.4 and 8.5d describe the procedures by which an employee can be assigned or volunteer for overtime work. Article 13 establishes the Postal Service's procedures for

attempting to accommodate an employee's illness or injury through assignment to light duty.

5. The Postal Service's EEO office serves the equivalent function as the Equal Employment Opportunity Commission does for a person employed by a private business. *See Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir.2000) ("Just as the EEOC processes complaints of discrimination from employees in the private sector, each federal agency must have an EEO Division to process complaints from agency employees.").

### Discussion and Analysis

■ Plaintiff has attempted to state a claim against the Union Defendants for breach of the duty of fair representation. A claim for breach of the duty of fair representation often, but not necessarily, accompanies a claim against the plaintiff's employer for breach of the collective bargaining agreement. The Supreme Court discussed the elements applicable to both claims in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983):

> The suit against the employer rests on § 301,[6] since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [the plaintiff] must not only show that [the company action taken against them] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" [*United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment) (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).] The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

Plaintiff's Complaint, however, does not state a claim against the Postal Service for breach of the National Agreement. Instead, Plaintiff limits his claims against Postmaster General John Potter to claims under Title VII and the Rehabilitation Act of 1973. See Complaint, ¶¶ 21–49 As a result, Plaintiff's Complaint falls into the category described in *DelCostello* of an employee who sues only his union for breach of the duty of fair representation and not his employer for breach of the collective bargaining agreement. *See id.* at 165, 103 S.Ct. 2281.

*DelCostello* also established a six-month statute of limitations period for a breach of the duty of fair representation claim. *See id.* at 169, 103 S.Ct. 2281. The court reached this conclusion by noting that the National Labor Relations Board "has consistently held that all breaches of a union's duty of fair representation *are* in fact unfair labor practices." *Id.* at 170, 103 S.Ct. 2281 (citing *Miranda Fuel Co.*, 140 N.L.R.B. 181 (1962), *enforcement denied*, 326 F.2d 172 (2d Cir.1963)) (emphasis in original). The Court, while not adopting the NLRB's conclusion, explained that the "family relationship" between breach of the duty of fair representation claims and claims for unfair labor practices "is undeniable." *Id.* The Court found that charges of unfair labor practices under section 10(b) of the National Labor Relations Act[7] are subject to a six-month limitations period. *Id.* at 169, 103 S.Ct. 2281; *see also* 29

---

6. § 301 refers to section 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185. This provision establishes a federal cause of action for the breach of a collective bargaining agreement. The cause of action described in the above quote from *DelCostello* is routinely called a "hybrid § 301/fair representation claim." *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. 2281.

7. Section 10(b) of the National Labor Relations Act is codified at 29 U.S.C. § 160(b).

U.S.C. § 160(b) ("[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and service of a copy thereof upon the person against whom such charge is made. . . .").

■ The Eleventh Circuit has followed *DelCostello* and applied the six-month limitations period to *both* hybrid § 301/fair representation claims and to *claims for breach of the duty of fair representation brought only against a union. See Erkins v. United Steelworkers,* 723 F.2d 837, 838 (11th Cir.1984) (holding that six-month limitations period established in *DelCostello* applies to a claim for breach of the duty of fair representation brought *only* against a union);[8] *see also Coppage v. U.S. Postal Serv.,* 281 F.3d 1200, 1204 (11th Cir.2002) ("In *DelCostello,* the Supreme Court adopted the six-month statute of limitations found in section 10(b) of the National Labor Relations Act . . . for all such hybrid [breach of the collective bargaining agreement and breach of the duty of fair representation] cases."); *Adams v. United Paperworkers Int'l Union A.F.L.C.I.O.,* 189 F.3d 1321, 1322 (11th Cir.1999) (applying six-month limitations period from section 10(b) of the National Labor Relations Act); *Proudfoot v. Seafarer's Int'l Union,* 779 F.2d 1558, 1559 (11th Cir.1986) ("The Supreme Court in *DelCostello* . . . held that the six-month statute of limitations

prescribed by § 10(b) of the National Labor Relations Act . . . applies to . . . suits . . . alleging . . . that the union has breached its duty of fair representation.").

■ With the statute of limitations period established for breach of the duty of fair representation claims, the next question that arises is at what point does the limitations period begin to run? The Eleventh Circuit has also addressed that question. "The general rule is that § 10(b)'s six-month limitation period starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation." *Proudfoot,* 779 F.2d at 1559 (citing *Howard v. Lockheed–Georgia Co.,* 742 F.2d 612, 614 (11th Cir.1984)). The *Proudfoot* court explained that in the context of a duty of fair representation claim "the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action. . . . By final action, we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage." *Id.; see also Adams,* 189 F.3d at 1322 (applying the *Proudfoot* court's analysis for determining when a "final action" by a union occurs). In *Howard,* the court explained that "[i]n the absence of fraud or concealment, § 10(b)'s six-month limitations period starts running when the claimant 'discovers, or in the exercise of

**8.** *Erkins* rejected the argument that the six-year statute of limitations period established in *Ala.Code* § 6–2–34 and that the one-year statute of limitations period established in *Ala.Code* § 6–2–39(a) (now repealed) for suits on contracts governs a breach of the duty of fair representation claim brought solely against a union. 723 F.2d at 838.

The court in *Waller v. International Harvester Co.,* 574 F.Supp. 166, 168 (N.D.Ill. 1983), also concluded that the six-month limitations period in 29 U.S.C. § 160(b) applies

to a claim for breach of the duty of fair representation brought against a union *without* an accompanying claim for breach of the collective bargaining agreement against the employer. The court explained that the factual distinction between the case at bar, where Waller was suing his union only, and *DelCostello,* which involved a hybrid § 301/ fair representation claim, was "irrelevant to the applicability of the six-month . . . limitation period." *Id.*

reasonable diligence should have discovered, the acts constituting the alleged [violation.]'" 742 F.2d at 614 (quoting *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 382 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979) (brackets in original) (citations omitted)). Applying these standards, Plaintiff "had six months to file [his lawsuit] against the Union ... from 'the date [he] knew or should have known of the Union's final action or the [Postal Service's] final action, whichever is later.'" *Coppage*, 281 F.3d at 1204 (quoting *Adams*, 189 F.3d at 1322).

■ To determine the date of the Postal Service's and the Union's "final action," the court must trace the history of Plaintiff's grievance. Plaintiff filed his grievance concerning his inability to work overtime in July 2001. In his Complaint, Plaintiff states that he filed his "complaint" with the Union on July 11, 2001. Complaint, ¶ 52. The Union Defendants contend that Plaintiff filed the grievance on July 20, 2001. Brief of Union Defendants in Support of Motion to Dismiss, Doc. # 18, at 7. The exact date that Plaintiff filed the grievance is not particularly important. What is important is the handling of the grievance once it was filed.[9]

The Step 1 Meeting was held on July 27, 2001. The Postal Service rendered its decision on Step 1 on August 30, 2001, denying Plaintiff's grievance. Pursuant to the National Agreement, Plaintiff had ten days to file an appeal to begin Step 2 of the grievance process. Accordingly, Plaintiff had until September 9, 2001, to file his Step 2 appeal. Absent the filing of an appeal of the Step 1 decision, the Postal Service's decision at Step 1 and the Union's actions in assisting with the Plaintiff's grievance became final actions on September 9, 2001, because the grievance was deemed to be waived. *See* National Agreement, Art. 15.3(B). Neither Plaintiff nor the Union Defendants filed a Step 2 grievance by September 9, 2001. Under Eleventh Circuit jurisprudence, the statute of limitations began to run for Plaintiff's breach of the duty of fair representation claim on that date. *See Coppage*, 281 F.3d at 1204; *Adams*, 189 F.3d at 1322. The six-month period concluded on March 11, 2002. Plaintiff did not file the instant action until December 20, 2002.

■ Plaintiff contends, however, that the filing of a charge with the EEO tolls the six-month limitations period for a breach of the duty of fair representation claim until the EEO concludes its inquiry and issues a right-to-sue letter. Plaintiff filed his charges with the EEO in September and October of 2001. Complaint, ¶ 36. Plaintiff received his right-to-sue letter on November 20, 2002. Complaint, Exh. A. Plaintiff argues that his EEO charges tolled the statute of limitations and that his breach of the duty of fair representation claim is timely because he filed it within ninety days of receiving his right-to-sue letter.

---

9. Article 15 of the National Agreement establishes the grievance procedures for both the Postal Service and its employees. The procedures can involve several stages called steps. For the purposes of this case, only the time limits for filing for Step 1 and Step 2 procedures are important. A Step 1 grievance must be filed within fourteen days after the employee or the union learned of the cause of the grievance. Once a decision is reached through the Step 1 process and the decision is conveyed to the grievant, "[t]he Union shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision." National Agreement, Art. 15.2(d) (Step 1). Article 15.3(B) states that "[t]he failure of ... the Union ... to meet the prescribed time limits of the Steps of this procedure ... shall be considered as a waiver of the grievance."

Plaintiff's contention is without merit. Two federal courts of appeals have concluded that the filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") does not toll the statute of limitations period in 29 U.S.C. § 160(b) for a breach of the duty of fair representation claim. *See Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 551 (7th Cir.1987) ("We therefore hold that the policy considerations do not favor, and indeed weigh against tolling the statute of limitations for a ... fair representation claim while Title VII charges are pending with the EEOC.");[10] *Gray v. Del Monte Corp.*, 762 F.2d 1007, 1985 WL 13154 (6th Cir.1985) (mem.unpublished), *available at* 1985 WL 13154, at *1 ("Because the rights afforded an employee under a collective bargaining agreement are independent of those protected under Title VII, the proceedings before the EEOC did not toll the time to file this action" for breach of the duty of fair representation.). Federal district courts have also reached the same conclusion. *See Ninham v. Nicolet Paper Co.*, 583 F.Supp. 1057, 1059 (E.D.Wis.1984) ("[P]laintiff's pursuit of her discrimination claim before the EEOC does not affect the running of the statute of limitations under 29 U.S.C. § 160(b)."); *Waller v. Int'l Harvester Co.*, 574 F.Supp. 166, 169 (N.D.Ill. 1983) ("Waller's failure to file his fair representation claim within the six-month limitation period cannot be excused simply because he filed a Title VII claim against the union with the EEOC."); *see also Copes v. Children's Hosp. of Philadelphia*, No. C.A. 99–1331, 1999 WL 782582, at *2 (E.D.Pa. Sept.27, 1999) ("[T]he time period for filing a [breach of the duty of fair representation] claim is not tolled by pursuing a Title VII claim with the EEOC."); *Snyder v. Fry's Food Stores of Ariz., Inc.*, No. CIV 95–2858 PHX RCB, 1996 WL 806690, at *3–4 (D.Ariz. July 18, 1996) (citing *Johnson* in support of the conclusion that the filing of an EEOC charge does not toll the limitations period for a breach of the duty of fair representation claim because "such a filing is not a precondition" to the claim), *rev'd on other grounds*, 201 F.3d 445, 1999 WL 1021463 (9th Cir.1999).

In reaching its decision, the *Ninham* court relied on the reasoning and analysis of the Supreme Court in *International*

10. The *Johnson* court did not address the question of whether the filing of a charge with the EEOC tolled the six-month limitations period for a hybrid § 301/fair representation claim directly on the merits. Johnson, the appellant, failed to raise the issue in the district court, and the court of appeals refused to consider the argument for the first time on appeal. *Johnson*, 826 F.2d at 547. The district court ruled that Johnson's hybrid § 301/fair representation claim was untimely under both Indiana's 90–day statute of limitations governing arbitration awards and the six-month limitations period under 29 U.S.C. § 160(b). *Id.* The *Johnson* court did, however, analyze the issue to determine if the district court's ruling was "plain error" that might jeopardize the district court's jurisdiction or if there were "exceptional circumstances where justice demands more flexibility." *Id.* at 548 (quoting *Heiar v. Crawford County*, 746 F.2d 1190, 1197 (7th Cir.1984); *Zbaraz v. Hartigan*, 763 F.2d 1532, 1544 (7th Cir.1985)). The court found that neither plain error nor exceptional circumstances existed under the facts of the case. *Id.* Johnson then argued that policy reasons favored tolling the limitations period for a hybrid § 301/ fair representation claim while EEOC charges were pending. *Id.* at 549. The court was unpersuaded by Johnson's argument, especially in light of the fact that a hybrid § 301/ fair representation claim is a legal remedy that is completely separate from any remedies under Title VII. *Id.* at 549–50. As a result, the court concluded that policy considerations do not favor tolling the six-month limitations period while an EEOC charge is pending. *Id.* at 551.

*Union of Electrical, Radio and Machine Workers Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), concerning the distinction between the remedies available under Title VII and the National Labor Relations Act. *Ninham,* 583 F.Supp. at 1059. In *Robbins & Myers,* the Court faced the converse of the issue facing this court in the instant case, namely whether a plaintiff's use of a grievance procedure provided for in a collective bargaining agreement tolled the limitations period for filing a charge with the EEOC. 429 U.S. at 232–34, 97 S.Ct. 441. In its opinion, the Court reaffirmed the independence of Title VII procedures from other remedies derived from contracts and collective bargaining agreements. *See id.* at 236–37, 97 S.Ct. 441 (citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52–54, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (holding that an arbitrator's decision in arbitration undertaken pursuant to a collective bargaining agreement is not binding on a plaintiff who pursues Title VII remedies in court); *Johnson v. Ry. Express Agency,* 421 U.S. 454, 460–61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that the timely filing of an EEOC charge pursuant to § 706 of Title VII, 42 U.S.C. § 2000e–5, did not toll the statute of limitations for an action brought on the same facts under 42 U.S.C. § 1981)).

The *Robbins & Myers* Court explained that the plaintiff was not pursuing "the same statutory claim in a different forum ... but was asserting an independent claim based on a contract right." 429 U.S. at 238, 97 S.Ct. 441. The *Alexander* Court specifically noted the distinct origins of remedies under Title VII, a statutory remedy, and a collective bargaining agreement, a contract. *See* 415 U.S. at 54, 94 S.Ct. 1011. Those distinctions are equally applicable to the instant case. The National Agreement between the NPMHU and the Postal Service provides a grievance procedure to employees like Plaintiff, and Plaintiff's rights under that grievance procedure are derived from the contract. In contrast, Plaintiff's rights to pursue his Title VII claims against Postmaster General Potter are derived from Title VII's statutory language. This reasoning was sufficient for the *Ninham* court to decide that if *Robbins & Myers* held that a plaintiff's pursuit of contract remedies does not toll the limitations period for the plaintiff's Title VII claims, the converse must also be true. *See Ninham,* 583 F.Supp. at 1059 ("Under the reasoning of *Robbins and Myers,* the plaintiff's pursuit of her discrimination claim before the EEOC does not affect the running of the statute of limitations under 29 U.S.C. § 160(b)."). This court agrees. Plaintiff's pursuit of the statutory prerequisites for filing a Title VII claim against the Postal Service and Postmaster General Potter does not toll the limitations period under 29 U.S.C. § 160(b) for a breach of the duty of fair representation claim. As a result, Plaintiff's claim for breach of the duty of fair representation is untimely.

Plaintiff cites three cases in support of his contention that his filing of an EEOC charge tolls the limitations period for his breach of the duty of fair representation claim. Plaintiff first cites *Vaca v. Sipes,* 386 U.S. 171, 184–85, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), in support of his argument that if he had filed his claim within the six-month period established by the Court in *DelCostello,* then "his claim would surely have been dismissed." Plaintiff's Response to Defendant's Motion to Dismiss, Doc #20, at 4–5. *Vaca* does not support this argument. One of the issues the Court addressed in *Vaca* was whether

an employee who is suing his employer for wrongful discharge can proceed with his suit without exhausting his contractual remedies established by a collective bargaining agreement. 386 U.S. at 183–88, 87 S.Ct. 903. The Court concluded that a "wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation." *Id.* at 186, 87 S.Ct. 903. The Court reached this conclusion because it realized that there may be instances in which the contractual remedies are controlled by the union and the employer, and the employee may not be able to obtain satisfactory redress for his claims. *Id.* at 185, 87 S.Ct. 903. The *Vaca* Court noted, however that an employee must first attempt to exhaust the *contractual grievance procedures* established by the collective bargaining agreement prior to bringing an action against his employer. *Id.* at 184, 87 S.Ct. 903. *Vaca* does not stand for the proposition that an employee must exhaust, or attempt to exhaust, his *statutory administrative procedures,* namely filing a complaint with the EEO, prior to bringing a suit against the union for breach of the duty of fair representation.

Plaintiff next cites *Marston v. Laclede Cab Co.,* 571 F.Supp. 1243 (E.D.Mo.1983). It is unclear how *Marston* supports Plaintiff's contention that his filing of his EEO charge tolls the six-month limitations period. In *Marston,* the court simply concluded that "a hybrid section 301/fair representation claim against both an employer and a union accrues on the date the employee's grievance is finally rejected." *Id.* at 1246. After the claim accrues, it is subject to either the ninety-day limitations period established by the Eighth Circuit prior to

*DelCostello* or to the six-month limitations period established by *DelCostello. Id.* Under either period, the plaintiff's claim was untimely. *Id. Marston* renders no assistance to Plaintiff's argument.

The final case Plaintiff cites in support of his argument is *Schutzer v. Little Red School House, Inc.,* No. 83 Civ. 8950(GLG), 1984 WL 856 (S.D.N.Y. Sept.12, 1984). This case lends no support to Plaintiff's position; in fact, it directly contradicts Plaintiff's argument. In *Schutzer,* the plaintiff sued her employer, her union, and her supervisor under a section 301/fair representation claim after her employer denied the plaintiff tenure and discharged her from her teaching position. *Id.* at *1. The plaintiff also brought a Title VII claim against her employer and her supervisor for sexual harassment and discrimination. *Id.* The court dismissed the Title VII claim because the plaintiff filed suit prior to receiving a right-to-sue letter from the EEOC. *Id.* at *4. The court also dismissed the hybrid section 301/fair representation claim because the plaintiff filed her civil action eight months after her cause of action accrued. *Id.* at *3. The court reached this decision despite the fact that the plaintiff's EEOC charge was still pending at the time the plaintiff filed her lawsuit. This fact directly refutes Plaintiff's argument that an EEO filing tolls the six-months limitations period.

### Conclusion

The court concludes that the filing of a charge with the EEO does not toll the six-month statute of limitations period established in *DelCostello* for a claim that a union breached its duty of fair representation. As the Supreme Court has explained, contractual remedies and Title VII remedies are independent and separate op-

tions that an aggrieved employee may pursue. The requirements of one do not toll the limitations period of the other. Plaintiff's claim for breach of the duty of fair representation accrued on September 9, 2001, but Plaintiff did not file this action until December 20, 2002. Accordingly, Plaintiff's claims against NPMHU, Local 317, and Davis are barred by the statute of limitations, and the Union Defendants' Motion to Dismiss is due to be GRANTED. The claims against the NPMHU are due to be DISMISSED with prejudice. Judgment on the pleadings is due to be GRANTED to Local 317 and Davis.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER and JUDGMENT

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

1. The Motion to Dismiss (Doc. # 17) filed by the National Postal Mail Handlers Union, Local 317, and Jimmy Davis is GRANTED.

2. All claims against the National Postal Mail Handlers Union are DISMISSED with prejudice.

3. Judgment on the pleadings is GRANTED as to Local 317 and Jimmy Davis. Judgment is entered for Local 317 and Jimmy Davis and against Plaintiff Michael L. Youngblood on Plaintiff's breach of the duty of fair representation claim against Local 317 and Jimmy Davis.