[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 5, 2002
THOMAS K. KAHN
CLERK

No. 01-11147

D. C. Docket No. 00-00018 CV-WDO-7

PATRICIA JOYCE COPPAGE,

                                        Plaintiff-Appellee,

                versus

UNITED STATES POSTAL SERVICE,
NATIONAL RURAL LETTER CARRIERS
ASSOCIATION,

                                        Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Georgia

**(February 5, 2002)**

Before EDMONDSON, DUBINA and COX, Circuit Judges.

DUBINA, Circuit Judge:

In 1997, Patricia Coppage ("Coppage"), angered by her termination from the United States Postal Service ("Postal Service"), filed a grievance with the National Rural Letter Carriers' Association (the "Union"). Although Coppage's grievance led to a favorable arbitration award, she later filed a second grievance regarding the enforcement of the arbitrator's award, which the Union and the Postal Service settled to her dissatisfaction. Ultimately, Coppage filed a federal district court action disputing the settlement of her second grievance. The district court granted summary judgment in favor of Coppage on her claims that the Postal Service and the Union breached the collective bargaining agreement and that the Union violated its duty of fair representation. The Postal Service and the Union appeal. We hold that Coppage's complaint was untimely as barred by the applicable six-month statute of limitations. Accordingly, we reverse.

## I. BACKGROUND

A. Facts

In 1983, the Postal Service hired Coppage as a rural letter carrier in Valdosta, Georgia. As an employee of the Postal Service, Coppage was a member of a collective bargaining unit of Postal Service employees for which the Union was the exclusive bargaining agent. Thus, Coppage turned to the Union when the Postal Service terminated her employment.

2

In March of 1997, the Postal Service discharged Coppage for making allegedly threatening gestures and comments. Upon her discharge, Coppage filed a grievance with the Union, alleging that her discharge violated the collective bargaining agreement between the Union and the Postal Service. Coppage's grievance proceeded to arbitration. On May 12, 1998, the arbitrator issued an award sustaining her grievance. Specifically, the award directed the Postal Service to reinstate Coppage immediately, expunge the removal from her records, restore her seniority, and give her back pay with interest.[1]

The Postal Service promptly reinstated Coppage. However, it refused to pay Coppage full back pay because she failed to find other employment during the pendency of the grievance process. The Postal Service based its decision on its Employee and Labor Relations Manual, which the National Collective Bargaining Agreement specifically incorporates. The Employee and Labor Relations Manual requires an employee to mitigate damages by locating or attempting to locate other employment before receiving back pay.[2] After the Postal Service disallowed

---

[1] Coppage's back pay award excluded any earnings that she had during her period of separation from the Postal Service.

[2] In particular, the Postal Service's Employee and Labor Relations Manual governs back pay awards in the Postal Service and provides that "[b]ack pay is allowed . . . provided the employee has made reasonable efforts to obtain other employment, except that the employee is not required to make such efforts during the

3

Coppage any back pay for the period from September 19, 1997, through May 20, 1998, she filed a second grievance with the Union in October of 1998. Coppage's second grievance complained that the Postal Service failed to comply with the arbitrator's award in at least four respects: (1) she received no interest; (2) she received no step increase; (3) she received no pay increase that should have resulted from the step increase; and (4) the Postal Service denied a portion of her back pay award.[3]

On July 27, 1999, the Union and the Postal Service settled Coppage's second grievance. The Union secured three of the four items claimed by Coppage – interest, the step increase, and the step increase's resulting pay increase. However, the Union and the Postal Service agreed that the arbitrator wrongfully awarded Coppage back pay due to her failure to mitigate damages. Coppage received a copy of the settlement agreement on August 14, 1999, and shortly thereafter, retained private counsel to challenge the settlement agreement.

On August 23, 1999, Coppage's counsel sent a letter to the Union contesting the settlement and demanding that the Union "reopen the issues in this grievance

first 45 days of the back pay period." [Appellant Postal Serv. Br. at Addendum.]

[3] Coppage's second grievance also contained a request for conversion of certain periods of leave without pay to sick leave. The Postal Service made that change. Thus, it became a moot issue in the grievance process.

and vigorously process it until Ms. Coppage secures back pay for the entire period she was deprived of employment by the Postal Service." [R. Vol. 1, Tab 18.] Coppage's attorney threatened to file suit immediately if the Union failed to act. The Union replied to the August 23, 1999, letter on August 31, 1999. In that reply, the Union refused to proceed, claiming that it satisfied its duty of fair representation with regard to Coppage's second grievance. On September 17, 1999, Coppage's attorney once again wrote the Union demanding that it fully prosecute Coppage's grievance and seek enforcement of the arbitrator's award. Coppage's attorney also repeated his threat of immediate litigation if the Union failed to do as requested. Through a letter dated September 22, 1999, the Union's counsel replied and stated, "I have your letter of September 17, 1999. You may govern yourself accordingly." [R. Vol. 1, Tab 18.]

B. Procedural History

Instead of filing suit immediately, as threatened, Coppage waited until February 29, 2000, to file her complaint. Her complaint alleged that the Postal Service breached the employment agreement by failing to adhere to the binding arbitration award and that the Union ratified the Postal Service's breach. The complaint also alleged that the Union breached its duty of fair representation by failing to enforce the arbitrator's award. The Postal Service and the Union argued

5

that a six-month statute of limitations barred Coppage's complaint and that she failed to state a claim upon which relief could be granted. On cross motions for summary judgment, the district court granted summary judgment in favor of Coppage on her claims against both the Postal Service and the Union. The district court found that Coppage's complaint was timely as the statute of limitations began to run on September 22, 1999, when the Union replied to Coppage's attorney's second letter directing that he "govern [himself] accordingly." This timely appeal followed.

## II. ISSUES

(1) Whether the district court erred by finding that Coppage's complaint was timely.

(2) Whether the district court erred by finding that the Postal Service failed to comply with the arbitration award, and consequently, violated its collective bargaining agreement with the Union.

(3) Whether the district court erred by finding that the Union breached its duty of fair representation to Coppage.

## III. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the party opposing the motion.

6

*Transamerica Leasing, Inc. v. Institute of London Underwriters*, 267 F.3d 1303, 1307 (11th Cir. 2001).

## IV.  DISCUSSION

Coppage's complaint alleges that the Postal Service breached its obligations under the employment agreement and that the Union violated its duty of fair representation.  The Supreme Court of the United States describes such a lawsuit as a "hybrid § 301/ fair representation claim." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S. Ct. 2281, 2291, 76 L. Ed. 2d 476 (1983).  Coppage's claim is a hybrid claim because it "comprises two causes of action." *DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2290.  The first cause of action involved is against the employer for breach of the collective bargaining agreement. This claim rests on section 301 of the Labor Management Relations Act.  *See* 29 U.S.C. § 185(a) (1994).  The second claim is against the union for breach of the union's duty of fair representation. *DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2290 (explaining that the union's duty of fair representation is implied under the National Labor Relations Act).  "Yet the two claims are inextricably interdependent." *DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2291 (*quoting United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66-67, 101 S. Ct. 1559, 1565-1566 (1981)).

7

In *DelCostello*, the Supreme Court adopted the six-month statute of limitations found in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), for all such hybrid cases. *DelCostello*, 462 U.S. at 169-171, 103 S. Ct. at 2293-2294. Thus, Coppage had six months to file her hybrid suit against the Union and the Postal Service from "the date [she] knew or should have known of the Union's final action or the [Postal Service's] final action, whichever is later." *Adams v. United Paperworkers Int'l*, 189 F.3d 1321, 1322 (11th Cir. 1999). The "final action" is the point at which "the grievance procedure was exhausted or otherwise [broken] down to the employee's disadvantage." *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986) (*citing Howard v. Lockheed-Georgia Co.*, 742 F.2d 612 (11th Cir. 1984)).

All parties involved, Coppage, the Postal Service, and the Union, agree that Coppage's action must have been filed within six months of the "final action" to be timely. However, the parties disagree on when the "final action" occurred and when Coppage knew or should have known of the "final action." The Postal Service and the Union argue that the "final action" occurred on July 27, 1999, when they met and settled Coppage's second grievance. Coppage argues that the "final action" did not occur on July 27, 1999, because the agreement reached on that date was not binding. The settlement agreement provided that

8

It is our understanding that the grievant has received payment on the interest that should have been originally included in back-pay. It is further understood, that the grievant has received all step increases that are due per the arbitration decision, and the pay increases as a result of said step increases. The period of back-pay that was disallowed was in accordance with the [Employee and Labor Relations Manual] is not under the jurisdiction of an arbitrator.

If the grievant has not received any of the above, she may notify the State Steward within 10 days of the receipt of this decision and a determination will be made as to whether to re-open any issue at Step 2. Time limits will be extended to this end.

[R. Vol. 1, Tab 18.] Coppage contends that this provision allows for the re-opening of any issue. However, Coppage misreads the settlement agreement.

The settlement agreement provides for the receipt of interest, a step increase, and a pay increase, but it does not provide for back pay. The re-opening provision applies only to those items which the settlement provided she was to "receive" – interest, a step increase, and a pay increase. It does not apply to back pay. In addition, the re-opening provision applies only if she did not receive the interest, step increase, or pay increase. Because Coppage received these items, the agreement was final. Furthermore, the settlement agreement was binding on Coppage. The Union, acting as Coppage's exclusive bargaining representative

under the collective bargaining agreement,[4] entered into the agreement on her

behalf. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 226, 103 S. Ct.

588, 597, 74 L. Ed. 2d 402 (1983) ("When the union, as the exclusive agent of the

employee, waives arbitration or fails to seek review of an adverse decision, the

employer should be in substantially the same position as if the employee had had

the right to act on his own behalf and had done so. Indeed, if the employer could

not rely on the union's decision, the grievance procedure would not provide the

'uniform and exclusive method for [the] orderly settlement of employee

grievances,' which the Court has recognized is essential to the national labor

policy.") (citations omitted). Therefore, July 27, 1999, marks the final action by

the Union and the Postal Service because the settlement agreement reached on that

date exhausted the grievance process. The key inquiry then becomes when

Coppage knew, or should have known, about the Union's decision to no longer

pursue her second grievance.

Coppage argues that the district court correctly determined that the statute of

limitations began to run on September 22, 1999, when her attorney received the

---

[4] The national collective bargaining agreement between the Postal Service and the Union provides that the Union is the exclusive bargaining agent for all members of its bargaining unit and that "at any step in the grievance procedure, the Union representative shall have full authority to settle or withdraw the grievance in whole or in part." [R. Vol. 1, Tab 13.]

Union's final letter advising him to "govern yourself accordingly." Coppage argues that even if the district court erred in determining that the statute of limitations began to run on September 22, 1999, her complaint was still timely because the earliest possible notice that the Union refused to process her grievance any further was the Union's letter, written in reply to Coppage's attorney's first letter, on August 31, 1999.

The Union and the Postal Service, on the other hand, submit that the statute of limitations began to run on August 14, 1999, when Coppage received a copy of the binding grievance settlement agreement because the final action in the grievance process occurred on July 27, 1999.[5] We agree.

In the typical hybrid suit, where the employee is attempting to overturn an unfavorable arbitration award based on a union's errors during the arbitration proceeding, the claim accrues when the employee learns of the arbitrator's unfavorable award. *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 n.7

---

[5] The Postal Service and the Union assert, alternatively, that at the very latest, the statute of limitations began to run on August 23, 1999, when Coppage's private counsel wrote a letter to the Union threatening to sue if the Union refused to "reopen" the back pay mitigation issue. They contend that the letter proves that Coppage was fully aware of the provisions of the grievance settlement, including the provision reducing her back pay, and that the grievance process had exhausted itself as evidenced by her attorney's demand that they "reopen" the issue. If the statute of limitations began to run on August 23, 1999, or before, Coppage's complaint, filed February 29, 2000, was untimely.

(11th Cir. 1985) ("Because questions as to the union's breach of its duty of fair representation usually arise in an action to overturn an unfavorable arbitration award, knowledge of the union's breach can normally be attributed to the employee at the moment when he learns of the unfavorable award."); *see also Hayes v. Reynolds Metals Co.*, 769 F.2d 1520, 1522-23 (11th Cir. 1985) (holding that the grievance process came to a halt when an employee "was notified by letter dated June 17, 1982, that the union would not take his claim to arbitration" and that he had six months from the date that he received the letter to bring a hybrid claim); *Howard v. Lockheed-Georgia Co.*, 742 F.2d 612 (11th Cir. 1984) (holding that an employee's action accrued when the employee actually knew that the union denied his grievance even though written notice followed later).

Unlike the typical hybrid suit, Coppage received a favorable arbitration award. She objects to the Union's refusal to enforce the award as requested in her second grievance.[6] However, Coppage's claim should accrue as in a typical

---

[6] All of Coppage's claims arise from the Union and Postal Service's actions in settling the second grievance. For example, Coppage's complaint states

> [b]y agreeing without sufficient justification to her employer's unilaterally imposed reduction in the back pay the Arbitrator awarded Plaintiff, by failing to permit Plaintiff to participate in the "settlement" negotiations of her grievance on the back pay, by failing to accord Plaintiff the opportunity to consent to the "settlement," by dropping a patently valid claim without securing any relief to Plaintiff, and by

12

hybrid suit involving an unfavorable arbitration award.  In other words, Coppage's knowledge of the unfavorable settlement agreement is akin to a plaintiff's knowledge of an unfavorable arbitration award.

Coppage's claim accrued when she learned of the unfavorable settlement. The Union did not continue to process her grievance by receiving two letters from her counsel, reading the letters, and replying to them advising Coppage that she had no further recourse on her claim.  The settlement agreement exhausted the grievance process.  Coppage's attorney cannot toll the statute of limitations simply by writing letters to the Union protesting the binding final settlement of Coppage's grievance.  Allowing an attorney to toll the statute of limitations in such a manner would undermine the purpose of statutes of limitations, which is to require the "prompt presentation of claims."  *United States v. Kubrick*, 444 U.S. 111, 117, 100 S. Ct. 352, 357, 62 L. Ed. 2d 259 (1979); *see also Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 262-63 (3d Cir. 1990) ( "If repeated requests to a union to institute a grievance were to perpetually toll the statute of limitations . . . the statutory time bar would be illusory.").  Therefore, the six-month statute of limitations began to

---

refusing without sufficient justification to process Plaintiff's backpay grievance to arbitration, [the Union] breached the duty of fair representation it owed to Plaintiff.

[R. Vol. 1, Tab 1.]

run on August 14, 1999, when Coppage received the grievance settlement agreement. Because Coppage did not file her suit until February 29, 2000, her complaint was untimely.[7]

## V. CONCLUSION

The six-month statute of limitations on Coppage's hybrid action against the Postal Service and the Union began to run on August 14, 1999, when she received notice of the settlement agreement ending the grievance process. As a result, her complaint filed on February 29, 2000, was time-barred. Accordingly, we reverse the district court's grant of summary judgment in her favor and remand this case with directions to enter judgment in favor of the Postal Service and the Union.

**REVERSED AND REMANDED.**

---

[7] Because of our disposition as to the timeliness of Coppage's complaint, we need not address the Postal Service and Union's remaining claims.

14