[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14905
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cv-00218-RS-WCS

TROY G. AVERA,

                                        Plaintiff-Appellant,

versus

AIRLINE PILOTS ASSOCIATION INTERNATIONAL,
AIRLINE PILOTS ASSOCIATION MASTER EXECUTIVE COUNCIL,
UAL Corporation and United Airlines, Inc.,

                                        Defendants-Appellees,

UNITED STATES OF AMERICA,

                                        Intervenor-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 9, 2011)

Before EDMONDSON, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Proceeding <u>pro se</u>, Troy G. Avera sued the Airline Pilots Association, International, and the United Airlines Master Executive Council (collectively, "ALPA") for violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621; the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101; and for breach of the duty of fair representation under the Railway Labor Act, 45 U.S.C. § 151, <u>et seq.</u> Avera also petitioned for a declaratory judgment that the Fair Treatment of Experienced Pilots Act ("FTEPA"), 49 U.S.C. § 44729, and the Federal Aviation Administration's ("FAA") "Age 60 Rule," 14 C.F.R. § 121.383, were unconstitutional. Pursuant to 28 U.S.C. § 2403(a), the United States intervened to defend the constitutionality of the FTEPA. The district court dismissed the ADEA, ERISA, and constitutional claims for failure to state a claim and dismissed the Railway Labor Act claim as barred by the statute of limitations.

On appeal, Avera argues that the district court erred by dismissing his complaint because (1) the FTEPA is unconstitutional and could not shield ALPA from liability on his claims, (2) he stated a claim for violations of the ADEA, ERISA, and the Railway Labor Act, and (3) his claims under the Railway Labor Act were

timely under the delayed-discovery doctrine. Avera also appeals the district court's dismissal of his challenge to the Age 60 Rule, but the government argues that the district court lacked jurisdiction over this claim. After thorough review, we agree with the government, and affirm in large part, but reverse and remand the district court's ruling on the Age 60 Rule.

## I.

"The issue of whether the district court had subject matter jurisdiction over [the] complaint is a question of law subject to de novo review." Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1222 (11th Cir. 1999). "The constitutionality of a statute is a question of law subject to de novo review." Cooper v. Dillon, 403 F.3d 1208, 1213 (11th Cir. 2005) (quotation omitted). "A district court's dismissal for failure to state a claim under Rule 12(b)(6) is reviewed de novo." Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007).

## II.

As an initial matter, the United States argues that the district court lacked jurisdiction over Avera's challenge to the Age 60 Rule. We have a special obligation to satisfy ourselves not only that we have jurisdiction over this appeal, but also that the district court had jurisdiction over the various counts of the complaint. Tamiami

Partners, 177 F.3d at 1221. "When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." Id. (alterations and quotation omitted).

Pursuant to 49 U.S.C. § 46110(a):

a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or . . . the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part [pertaining to air commerce and safety], [or] part B [pertaining to airport development and noise] . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

49 U.S.C. § 46110(a); see also George Kabeller, Inc. v. Busey, 999 F.2d 1417, 1422 (11th Cir. 1993). "[T]he court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Under Secretary, or Administrator to conduct further proceedings." 49 U.S.C. § 46110(c). The term "order" in the statute "has been given expansive instruction." Green v. Brantley, 981 F.2d 514, 519 (11th Cir. 1993) (quotation omitted). Although the issue has not arisen in this Court, the D.C. Circuit has stated that the statute could encompass "direct

4

review of regulations promulgated through informal notice-and-comment rulemaking." City of Rochester v. Bond, 603 F.2d 927, 933 n.26 (D.C. Cir. 1979). "Where Congress has provided in the courts of appeals an exclusive forum for the correction of procedural and substantive administrative errors, a plaintiff may not bypass that forum by suing for damages in district court." Brantley, 981 F.2d at 521. Stated differently, the district court lacks subject matter jurisdiction to consider "an impermissible collateral challenge to [an] agency order." Id.

The FAA is charged with "promot[ing] safe flight of civil aircraft in air commerce by prescribing . . . regulations in the interest of safety for the maximum hours or periods of service of airmen and other employees of air carriers." 49 U.S.C. § 44701(a)(4). The FAA promulgated the Age 60 Rule in 1959 pursuant to this mandate. The Rule provided that no pilot may serve as a pilot in operations of a commercial aircraft if that person has reached his 60th birthday. 14 C.F.R. § 121.383(c) (2007).

In count four of the amended complaint, Avera sought a declaration that both the FTEPA and the Age 60 Rule were unconstitutional both facially and as applied to him. But as described above, only the court of appeals has exclusive jurisdiction to review a final order of the FAA. Avera may not bypass our exclusive jurisdiction by pursuing in the district court a collateral attack on the FAA's orders. See Brantley,

5

981 F.2d at 521. Accordingly, we remand with instructions to vacate the district court's order in part and to dismiss for lack of subject matter jurisdiction Avera's constitutional challenges to the Age 60 Rule. See Tamiami, 177 F.3d at 1221.

III.

Next, we reject Avera's claims that the FTEPA violates the Due Process and Equal Protection Clauses of the Fifth Amendment, violates the prohibition against bills of attainder, and effects an unconstitutional taking without compensation. Prior to enactment of the FTEPA, the Age 60 Rule provided that no person could fly a commercial aircraft after his 60th birthday. 14 C.F.R. § 121.383(c) (2007). However, section (d) of the FTEPA expressly states that, after its enactment, the Age 60 Rule "shall cease to be effective." 49 U.S.C. § 44729(d). Instead, the FTEPA provides that "a pilot may serve in multicrew covered operations until attaining 65 years of age." 49 U.S.C. § 44729(a). On appeal, Avera challenges two specific provisions of the FTEPA: the non-retroactivity clause and protection-for-compliance clause. The FTEPA's non-retroactivity provision provides:

> No person who has attained 60 years of age before the date of enactment of this section may serve as a pilot for an air carrier engaged in covered operations unless --

> (A) such person is in the employment of that air carrier in such operations on such date of enactment as a required flight deck crew member; or

6

(B) such person is newly hired by an air carrier as a pilot on or after such date of enactment without credit for prior seniority or prior longevity for benefits or other terms related to length of service prior to the date of rehire under any labor agreement or employment policies of the air carrier.

49 U.S.C. § 44729(e)(1). The FTEPA also includes a protection-for-compliance provision, which provides:

An action taken in conformance with this section, taken in conformance with a regulation issued to carry out this section, or taken prior to the date of enactment of this section in conformance with [the Age 60 Rule] (as in effect before such date of enactment), may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality.

49 U.S.C. § 44729(e)(2).

There is no merit to Avera's claim that the FTEPA violates the Equal Protection Clause by targeting "a small ascertainable class" of pilots born between 1942 and 1947 and extinguishing that small group's "property rights (work, employment, and contract rights), while affording every other person in every other profession . . . the protections of the ADEA." The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner. Gary v. City of Warner Robins, 311 F.3d 1334, 1337 (11th Cir. 2002). "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification."

7

Id. If a law treats individuals differently on the basis of race or another suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny. Eide v. Sarasota County, 908 F.2d 716, 722 (11th Cir. 1990). Otherwise, the law need only have a rational basis -- i.e., it need only be rationally related to a legitimate government purpose. Id.

Although classifications based on race or gender receive strict scrutiny, "[a]ge classifications . . . cannot be characterized as 'so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.'" Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000). Accordingly, "age is not a suspect classification under the Equal Protection Clause," and a classification based on age receives rational-basis review. Id. at 83-84.

The rational-basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it. Leib v. Hillsborough County Public Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009). This standard is easily met. As the Supreme Court has held, under rational-basis review, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller v. Doe by Doe, 509 U.S. 312, 320

8

(1993). "Rather, a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." Leib, 558 F.3d at 1306. "Under rational basis review, a court must accept a legislature's generalizations even when there is an imperfect fit between means and ends." Id.

The FTEPA complies with the Equal Protection Clause. Although Avera argues that this Court should review the FTEPA under the strict-scrutiny standard, age is not a suspect classification and Avera identifies no fundamental right burdened by the FTEPA. Applying rational-basis review, the Supreme Court has rejected equal-protection challenges to mandatory-retirement schemes. See Gregory v. Ashcroft, 501 U.S. 452 (1991) (mandatory retirement at age 70 for state court judges complied with the Equal Protection Clause). Additionally, the FTEPA's non-retroactivity provision is rationally related to the government's objective of avoiding disharmony and discord in the labor market. See Kimel, 528 U.S. at 92-93 (Stevens, J., concurring in part and dissenting in part) ("Congress' power to regulate the American economy includes the power to regulate both the public and the private sectors of the labor market."). Congress could rationally have concluded that allowing all retired commercial pilots between the ages of 60 and 65 to return to their prior positions with full seniority would disrupt the airline pilots' labor hierarchy.

Finally, the FTEPA's protection-for-compliance provision is rational because Congress may legitimately seek to minimize any conflict between the FTEPA and other employment laws. Accordingly, the FTEPA survives rational-basis review, and Avera's equal-protection challenge fails.

Nor is there any merit to Avera's claim that the FTEPA violates the Due Process Clause because the Act's non-retroactivity provision prevented him from being re-employed at his former position and deprived him of his longevity and seniority at his former airline, the Act violated his right to procedural due process by preventing him from seeking reinstatement at United Airlines at his old position, and the Act is unconstitutionally vague. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend V. The Due Process Clause provides "two different kinds of constitutional protection: procedural due process and substantive due process." McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Id. at 1556 (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

"A finding that a right merits substantive due process protection means that the right is protected against certain government actions regardless of the fairness of the

procedures used to implement them." Id. (quotation omitted). However, "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution. Id. (quotation omitted).

In analyzing a procedural due process claim, on the other hand, we ask whether the plaintiff identified a property interest of which he was deprived by state action and, if so, whether the plaintiff received sufficient process regarding that deprivation. Ross v. Clayton County, Ga., 173 F.3d 1305, 1307 (11th Cir. 1999). Nevertheless,

> [t]he Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

Minnesota State Bd. for Cmty. Colleges v. Knight, 465 U.S. 271, 284 (1984) (quotation omitted).

Moreover, "[d]ue process requires 'that the law must be one that carries an understandable meaning with legal standards that courts must enforce.'" Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1310 (11th Cir. 2009) (quoting Giaccio v. Pennsylvania, 382 U.S. 399, 403 (1966)). "The void-for-vagueness

11

doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Id. (quotation and brackets omitted). "The Supreme Court has warned against the mechanical application of vagueness doctrine, emphasizing that an 'economic regulation is subject to a less strict vagueness test' and there should be 'greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" Id. at 1310-11 (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99 (1982)).

To the extent Avera challenges the FTEPA as violating his right to substantive due process, the challenge fails because Avera identified no fundamental right burdened by any of the FTEPA's provisions and because, as described above, the Act survives rational-basis review. Avera's procedural due process challenge also fails. Even assuming that the FTEPA revoked Avera's property interest in his seniority at United Airlines (which interest Avera no longer had because he was terminated in accord with the Age 60 Rule and no longer had any expectation of future employment as a commercial pilot), Congress acted rationally and within its power by enacting the FTEPA and therefore Avera's rights were protected only by his power, "immediate

12

or remote, over those who make the rule." Knight, 465 U.S. at 284. Finally, Avera's vagueness challenge fails because the FTEPA is understandable by persons of normal intelligence, and Congress need not define every term in a statute and need not dedicate a federal agency to interpret each provision of a statute.

We likewise reject Avera's claim that the FTEPA is an unlawful bill of attainder because the Act singles out an easily ascertainable group of commercial pilots born between 1942 and 1947 and punishes the group by depriving the pilots of their rights under the employment laws and their rights to negotiate a return to work and to negotiate better terms of employment. The U.S. Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 468 (1977). "A statute inflicts constitutionally forbidden punishment if (1) the statutory penalty falls within the historical meaning of legislative punishment, (2) the statute fails to further any nonpunitive legislative purpose, or (3) the legislative history establishes a congressional intent to punish." Whitney v. Heckler, 780 F.2d 963, 973 (11th Cir. 1986).

13

As applied here, neither the non-retroactivity provision nor the protection-for-compliance provision inflicts the sort of burden "historically associated with punishment." Selective Serv. Sys. v. Minn. Pub. Interest Research Group, 468 U.S. 841, 853 (1984)). Although "legislative bars to participation by individuals or groups in specific employments or professions" may constitute punishment, id. at 852, the FTEPA's non-retroactivity provision does not bar Avera from working as a commercial airline pilot. Furthermore, the FTEPA's protection-for-compliance provision does not, by merely narrowing the scope of statutory causes of action, deny Avera access to the courts. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 432 (1982) ("[T]he State remains free to create substantive defenses or immunities for use in adjudication -- or to eliminate its statutorily created causes of action altogether."). Although these provisions restrict Avera's new right to fly until the age of 65, "[f]orbidden legislative punishment is not involved merely because the Act imposes burdensome consequences." Nixon, 433 U.S. at 472. Accordingly, the FTEPA is not a bill of attainder.

Nor does the FTEPA effect a "taking" without just compensation. The Takings Clause in the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. To state a takings claim, "a plaintiff must first demonstrate that he possesses a 'property interest' that

14

is constitutionally protected." Givens v. Alabama Dept of Corrs., 381 F.3d 1064, 1066 (11th Cir. 2004). "The Takings Clause protects private property; it does not create it." Id. Therefore, to determine whether a particular property interest is protected, we look to "existing rules or understandings that stem from an independent source such as state law." Id. (quotation omitted). However, as described above, Avera has no constitutionally protected property interest in being rehired as a pilot with his former level of seniority. Accordingly, Avera's takings claim fails.

IV.

We are also persuaded by Avera's argument that the district court erred by dismissing his ADEA claim because his allegations stated a plausible, prima facie case for relief under the ADEA. "The ADEA makes it 'unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quoting 29 U.S.C. § 623(a)(1)). The ADEA also precludes a union from discriminating based on age or causing an employer to discriminate based on age. 29 U.S.C. § 623(c). Although a Title VII plaintiff may prove his case by showing that his membership in a protected class played a "motivating part" in the employment decision, an ADEA plaintiff must "prove that

15

age was the 'but for' cause of the employer's adverse decision. Gross v. FBL Servs., Inc., __ U.S. __, 129 S. Ct. 2343, 2349-50 (2009). Stated differently, the ADEA does not permit a "mixed-motive" claim for disparate treatment. Mora v. Jackson Memorial Foundation, Inc., 597 F.3d 1201, 1204 (11th Cir. 2010).

In this case, the district court correctly dismissed Avera's ADEA claim. To the extent Avera challenged ALPA's actions in conformance with the Age 60 Rule or the FTEPA, the protection-for-compliance provision expressly barred his claim. See 49 U.S.C. § 44729(e)(2) ("An action taken in conformance with this section . . . [or the Age 60 Rule] may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality."). To the extent Avera argues that ALPA violated the ADEA by lobbying for the FTEPA or opposing changes to the Age 60 Rule, Avera fails to specify how these acts discriminated against Avera based on his age. Finally, Avera's allegations pertaining to the bond-proceeds distribution formula fail because Avera conceded in the complaint that ALPA used a formula that, "because of the Age 60 Rule requiring 'early' retirement, resulted in younger Flight Officers . . . with levels of seniority equal or comparable to Plaintiff, receiving substantially larger monetary distributions from the sale of the UAL bonds than the distribution of $26,000.00 received by the Plaintiff." In other words, the formula's allegedly

discriminatory effect resulted from an application of the Age 60 Rule's mandatory retirement and not from invidious age discrimination. Therefore, Avera could not establish that age was the but-for cause of ALPA's discrimination, and the district court did not err by dismissing the ADEA claim. See Gross, 129 S.Ct. at 2349-50.

V.

We likewise find no merit in Avera's argument that the district court erroneously dismissed his ERISA claim. ERISA governs only "employee benefit plans." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987) (ERISA regulates employee benefit plans, not employee benefits); see also 29 U.S.C. § 1002(1). However, ERISA provides little guidance regarding the meaning of the phrase "employee benefit plan." See Fort Halifax, 482 U.S. at 8-9. Nevertheless, in Fort Halifax, the Supreme Court held that a Maine statute requiring lump-sum severance payments to employees displaced by plant closures was not an employee benefit plan. Id. at 12. The Court explained that ERISA was not triggered because the Maine statute created no "need for an ongoing administrative program for processing claims and paying benefits." Id.

Here, the district court correctly dismissed Avera's ERISA claim because Avera neither identified an ERISA plan nor alleged any facts from which the district court could infer an ERISA violation. To the extent Avera argues that the

bond-proceeds distribution formula violated ERISA, this claim fails because, as in Fort Halifax, the distribution constituted lump-sum payments that required no ongoing administrative program for processing claims. Accordingly, the district court properly dismissed the ERISA claim.

VI.

Finally, we reject Avera's arguments that the district court erred by dismissing his claims for breach of the duty of fair representation ("DFR"). The DFR is a judicially derived corollary to the union's statutory status as the employees' collective bargaining representative. See Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 75-76 (1991). A union owes members a duty to represent them adequately, honestly, and in good faith. Id. However, because a union needs wide latitude to ensure effective performance of its duties, judicial review of union action must be "highly deferential." Id. at 78. Moreover, a union violates the duty of fair representation only if its actions are "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967).

In the interest of labor relations stability, courts have adopted a short, six-month statute of limitation for the filing of DFR claims. Coppage v. U.S. Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002); Smallakoff v. Air Line Pilots Ass'n, Int'l, 825 F.2d 1544, 1546 (11th Cir. 1987). The limitations period begins to run

18

once the plaintiff discovers or should have discovered the acts that form the basis of the DFR claim. See Coppage, 281 F.3d at 1205-06 (six-month statute of limitations began to run when employee received notice of unfavorable settlement agreement between union and employer ending the grievance process).

In this case, the district court did not err by dismissing the DFR claim as untimely. Although the complaint included few dates, Avera was terminated in 2007, and all of ALPA's lobbying efforts concerning the FTEPA and the Age 60 Rule must have occurred before the FTEPA was enacted in December 2007. Furthermore, although Avera argues that his claim was timely under the "delayed discovery" doctrine because he did not learn of the relative distributions of the bond proceeds until June 2009, Avera alleged in his October 2007 EEOC charge that ALPA "negotiated a formula for the distribution of the proceeds of the UAL bond sale which resulted in younger Flight Officers with levels of seniority comparable to mine being given a larger amount of the monetary distribution from this bond sale from 2/06 to 2/07." Because Avera discovered the acts that formed the basis for this claim no later than October 2007, the six-month statute of limitations for his DFR claim expired by April 2008. Avera's June 2009 complaint was therefore untimely with respect to the DFR claim.

As for Avera's argument that he also asserted a state law claim for breach of "fiduciary duty," Avera failed to develop this claim in his complaint. But even assuming that this claim was timely and that ALPA was a "contractual fiduciary" for Avera, this claim would fail because ALPA was not responsible for drafting, interpreting, administering, or enforcing any of the FTEPA's provisions, and ALPA has not adjudicated its liability for administering the statute. Accordingly, the district court did not err by dismissing Avera's DFR claim or his claim for breach of fiduciary duty.

**AFFIRMED IN PART, REMANDED IN PART WITH INSTRUCTIONS.**