[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13178

_____

D.C. Docket No. 4:18-cv-00188-RSB-CLR

JUSTIN OLTMANNS,

Plaintiff-Appellant,

versus

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(December 1, 2020)

Before MARTIN, LUCK, and BRASHER, Circuit Judges.

MARTIN, Circuit Judge:

Justin Oltmanns is a member of the International Longshoremen's

Association, Local 1475 Clerks and Checkers Union ("Local 1475") and is

employed by Georgia Stevedore Association, Inc. ("Georgia Stevedore"). He

alleges that Local 1475 and Georgia Stevedore denied him seniority status that he

was entitled to based on past practice.  He also alleges they improperly failed to consider his seniority grievance.  Mr. Oltmanns sued Local 1475 and Georgia Stevedore, bringing what is called a "hybrid section 301/fair representation claim." This type of claim requires a plaintiff to show both that his union breached its duty of fair representation and that his employer breached a collective bargaining agreement.  See Coppage v. U.S. Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002).  The District Court dismissed Mr. Oltmanns's first amended complaint for failure to state a claim and denied him leave to amend his complaint a second time based on the court's finding that any amendment would be futile.  After careful consideration, and with the benefit of oral argument, we hold that neither complaint alleges sufficient facts to state a hybrid section 301/fair representation claim.  We therefore affirm the District Court's rulings.

## I.  BACKGROUND

Mr. Oltmanns works for Georgia Stevedore at the Port of Savannah in Savannah, Georgia.[1]  He has been a member of Local 1475 since July 2007 and has worked both as a "deck and dockman" and as a "clerk and checker."  A deck and dockman works on the decks of ships and the docks next to ships, performing clerical work, keeping track of where containers are, and moving the containers to

---

[1] Mr. Oltmanns does not allege that Georgia Stevedore is his employer, but the District Court assumed as much.  The parties here agree on this point, so we also assume that Georgia Stevedore is Mr. Oltmanns's employer.

where they need to go.  A clerk and checker works offsite on land, arranging transportation to and from the docks.

Mr. Oltmanns raises the issue of whether he is entitled to seniority as a clerk and checker on account of his deck and dockman work.  A few documents are relevant for this issue.  Under the umbrella collective bargaining agreement, employment seniority is "decided and enforced on a local basis."  Local 1475 and Georgia Stevedore have a local collective bargaining agreement and a local seniority plan.  The seniority plan states that seniority for "Checkers and Clerks, etc., shall be classified by the Seniority Board" based on the accumulation of at least 700 work hours for a specific contract year.  And although the seniority plan provides for seniority for clerks and checkers, it does not expressly mention seniority for deck and dockmen.  The same is true of the collective bargaining agreement.[2]  The deck and dockmen are recognized in a memorandum of understanding between Local 1475 and Georgia Stevedore that says "Deck and Dockmen shall work under the Clerk's and Checker's Agreement of Local 1475." This refers to the local collective bargaining agreement that incorporates the seniority plan.  But while the memorandum of understanding does recognize the

---

[2] Local 1475 submitted copies of the collective bargaining agreement and the seniority plan as exhibits to its motion to dismiss.  A court may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment when the documents are "central to the plaintiff's claim" and "undisputed."  Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  Mr. Oltmanns references and relies on these documents throughout his complaint and he does not dispute their authenticity, so we consider them here.

deck and dockmen, it does not discuss seniority for them and neither does it modify the seniority plan for clerks and checkers.[3]

Mr. Oltmanns says that "[p]ast port practice has been that when a person makes their hours as a Deck and Dockmen those hours are transferrable to Clerk and Checkers in regard to seniority classification." In other words, based on this past port practice, Mr. Oltmanns argues that hours worked as a deck and dockman can cross over and count toward clerk and checker seniority. Despite this purported practice, the record before us reflects no formal procedures for counting "crossover hours" for the purposes of seniority, and the relevant governing documents outlined above are "silent on the cross over seniority" issue. According to Mr. Oltmanns, he has repeatedly worked the number of hours as a deck and dockman that should qualify him for clerk and checker seniority. For instance, in the 2015–2016 contract year, he worked more than 1100 hours as a deck and dockman but was refused seniority as a clerk and checker.

Mr. Oltmanns filed a grievance about this discrepancy in seniority treatment, arguing that the hours he worked as a deck and dockman should have entitled him to clerk and checker seniority. A grievance hearing was held before the Port

---

[3] Unlike the collective bargaining agreement and the seniority plan, the memorandum of understanding was not attached to the operative complaint or a motion to dismiss. But because the District Court considered that document, which was attached to Mr. Oltmanns's initial complaint, we reference it here.

Grievance Committee in February 2018.[4]  During the hearing, Mr. Oltmanns was told his matter would be "tabled due to pending litigation."  Mr. Oltmanns says there was no pending litigation and there has been no further action on his seniority grievance.

In August 2018, Mr. Oltmanns sued Local 1475 in the Southern District of Georgia.  He alleged that Local 1475 breached its duty of fair representation in violation of section 301 of the Labor Management Relations Act (the "LMRA") by failing to grant him proper seniority classification.  After Local 1475 filed a motion to dismiss for failure to state a claim, Mr. Oltmanns amended his complaint, adding Georgia Stevedore as a defendant.  In the amended complaint, he alleged that both Local 1475 and Georgia Stevedore breached the duty of fair representation in violation of section 301 of the LMRA.[5]  Local 1475 then filed another motion to dismiss for failure to state a claim.  Local 1475 argued that in order for Mr. Oltmanns to state a hybrid section 301/fair representation claim, he must allege both that (i) his union, Local 1475, breached its duty of fair representation, and (ii) his employer, Georgia Stevedore, breached the collective

---

[4] The first amended complaint alleges that the "Port Grievance Committee" heard his grievance and indeed never mentions the Seniority Board.  Now Mr. Oltmanns "accepts the record evidence offered by the Defendant Local 1475" that it was actually the Seniority Board.  We understand that the Seniority Board is composed of the president and one member of Local 1475 as well as two members of Georgia Stevedore.

[5] The amended complaint also made a claim for attorney's fees, but Mr. Oltmanns does not raise that issue on appeal.

5

bargaining agreement. Under the first prong of the hybrid claim, Local 1475 said Mr. Oltmanns did not plausibly allege that its conduct toward him was "arbitrary, discriminatory, or in bad faith" and thus he had not plausibly alleged Local 1475 breached the duty of fair representation. And under the second prong, Local 1475 said Mr. Oltmanns never alleged that Georgia Stevedore breached any collective bargaining agreement. Georgia Stevedore filed its own motion to dismiss for failure to state a claim, which largely reiterated the arguments made by Local 1475.

In arguing against dismissal, Mr. Oltmanns stated "the amended complaint makes the proper allegations and gives substantial supporting facts" for the breach of the duty of fair representation claim. Mr. Oltmanns later filed a request for leave to amend his complaint again and attached his proposed second amended complaint. In this proposed second amended complaint, Mr. Oltmanns sought to add an additional claim alleging that Georgia Stevedore breached the collective bargaining agreement. Local 1475 and Georgia Stevedore opposed Mr. Oltmanns's request for leave to amend, arguing that any amendment would be futile.

The District Court primarily analyzed the proposed second amended complaint, as opposed to the operative pleading, which was the first amended complaint. It considered whether the proposed complaint would survive a motion

6

to dismiss.  The court observed that the "only material difference" between the operative complaint and the proposed complaint was "the addition of a claim against [Georgia Stevedore] for breach of the collective bargaining agreement." Therefore, "[t]o the extent that the proposed Second Amended Complaint successfully states a claim for relief," the District Court would grant Mr. Oltmanns's request for leave to amend and deny the motions to dismiss as moot. But to "the extent that the proposed Second Amended Complaint's amendment would be futile, the Amended Complaint would similarly fail to state a claim," such that the District Court would grant the motions to dismiss.

Starting with the proposed complaint's allegations that Local 1475 breached its duty of fair representation, the District Court observed that the "allegations in the Complaint[] do not support a finding that [Local 1475's] conduct was arbitrary, discriminatory, or in bad faith."  And as to the proposed claim that Georgia Stevedore breached the collective bargaining agreement, the District Court noted that Mr. Oltmanns did "not cite to any provision of the collective bargaining agreement or allege facts supporting a breach thereof."  Based on its findings that neither complaint adequately alleged that Local 1475 breached its duty of fair representation and that Georgia Stevedore breached the collective bargaining agreement, the District Court granted the motions to dismiss the first amended

7

complaint and denied Mr. Oltmanns's request for leave to file the proposed second amended complaint as futile. This is Mr. Oltmanns's appeal.

## II.  STANDARDS OF REVIEW

We review <u>de novo</u> a district court's order granting a motion to dismiss for failure to state a claim. <u>Lawson-Ross v. Great Lakes Higher Educ. Corp.</u>, 955 F.3d 908, 915 (11th Cir. 2020). In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). Although legal conclusions "are not entitled to the assumption of truth," we "assume the[] veracity" of "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679, 129 S. Ct. at 1950. If not, then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)). Although we generally review a denial of leave to amend a complaint for abuse of discretion, we "review <u>de novo</u> an order denying leave to amend on the grounds of futility, because it is a conclusion of law that an amended complaint would necessarily fail." <u>Boyd v. Warden, Holman Corr. Facility</u>, 856 F.3d 853, 864 (11th Cir. 2017).

### III.  DISCUSSION

Mr. Oltmanns argues the District Court erred by (i) granting the motions to dismiss the first amended complaint and (ii) denying him leave to file the proposed second amended complaint.  As noted above, the District Court considered these two issues together by evaluating Mr. Oltmanns's proposed second amended complaint.  Again, the only difference between the operative and proposed complaints was the addition of the breach of a collective bargaining agreement claim against Georgia Stevedore.  Thus "[t]o the extent that the proposed Second Amended Complaint's amendment would be futile, the Amended Complaint would similarly fail to state a claim."  We see nothing wrong with the District Court's analytical approach, but we will nevertheless conduct our review of each issue separately.  First, we address whether the first amended complaint fails to state a claim against either Local 1475 or Georgia Stevedore, or both.  Second, we consider whether the proposed second amended complaint fails to state a claim, such that leave to amend would be futile.

A.    The first amended complaint fails to state a claim.

Mr. Oltmanns's claim against Local 1475 and Georgia Stevedore is considered a "hybrid § 301/fair representation claim."  Coppage, 281 F.3d at 1204 (quoting DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 165, 103 S. Ct. 2281, 2291 (1983)) (quotation marks omitted).  The claim is "hybrid" because

9

it includes two causes of action that are "inextricably interdependent."  Id. (quotation marks omitted).  One cause of action is against an employee's union for breaching its duty of fair representation, which duty is implied under the National Labor Relations Act.  Id.; see also Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 886 & n.5 (11th Cir. 2013) (noting that the duty of fair representation arises under federal common law and is implied from section 9(a) of the National Labor Relations Act).  The other cause of action is against the employer for breaching a collective bargaining agreement.  Coppage, 281 F.3d at 1204.  That cause of action is based on section 301 of the LMRA, which states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).

Thus, to succeed on his hybrid claim at the motion to dismiss stage, Mr. Oltmanns must plausibly allege both that (i) his union, Local 1475, breached its duty of fair representation, and (ii) his employer, Georgia Stevedore, breached a collective bargaining agreement.  See Parker v. Connors Steel Co., 855 F.2d 1510, 1519 (11th Cir. 1988).  The absence of either allegation is fatal to the complaint: "[I]n order to prevail the employee must satisfy his burden of proving a breach of contract by the Company and a breach of the Union's duty of fair representation." Id.  Applying this legal framework here, there is no question that the first amended

10

complaint fails as a matter of law.  The first amended complaint does not allege that Georgia Stevedore, Mr. Oltmanns's employer, breached any collective bargaining agreement.  Therefore, the first amended complaint lacks one of the required elements of a hybrid section 301/fair representation claim, so it fails to state a claim.  See id.  The District Court properly dismissed the first amended complaint.

B.    The proposed second amended complaint fails to state a claim, so leave to amend would be futile.

Mr. Oltmanns's proposed second amended complaint added the claim alleging a breach of the collective bargaining agreement by Georgia Stevedore that had been missing from the first amended complaint.  Under the Federal Rules of Civil Procedure, a district court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a court need not give leave "where amendment would be futile."  Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam) (quotation marks omitted).

Here, the District Court denied leave to amend as futile.  We review this decision de novo "because it is a conclusion of law that an amended complaint would necessarily fail."  Boyd, 856 F.3d at 864.  Amendment is futile "when the complaint as amended is still subject to dismissal because, for example, it fails to state a claim for relief."  Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1094 (11th Cir. 2017) (quotation marks omitted).  When deciding whether the

11

complaint as amended is still subject to dismissal, the usual motion to dismiss standard applies.  Id.  Therefore, we must decide whether the proposed second amended complaint states a hybrid section 301/fair representation claim.

We look first to Mr. Oltmanns's claim that Local 1475 breached its duty of fair representation.  Because we conclude that the proposed complaint fails to sufficiently allege that Local 1475 breached that duty, we end our analysis there. We need not reach the claim that Georgia Stevedore breached a collective bargaining agreement, and we do not.  Under the duty of fair representation, a union "has an obligation to fairly represent the employee during the course of grievance proceedings."  Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir. 1982).  The union breaches its duty of fair representation when its "handling of the grievance was either arbitrary, discriminatory, or in bad faith."  Id. (quotation marks omitted); see also Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S. Ct. 1127, 1130 (1991) (holding that this rule "applies to all union activity").  As an initial matter, to the extent Mr. Oltmanns grounds any part of his duty of fair representation claim on his allegation that the Port Grievance Committee improperly tabled his grievance because of nonexistent pending litigation, the proposed complaint contains a fundamental defect.  Namely, while the proposed complaint says the Port Grievance Committee tabled his grievance based on that purported falsity, it entirely fails to allege that Local 1475 agreed to,

12

advocated for, or even contemplated that decision.[6]  Without such allegations, we cannot say "the union's handling of the grievance" was arbitrary, discriminatory, or in bad faith.  See Schwerman Trucking, 668 F.2d at 1206 (emphasis added).  And even if the proposed complaint alleged that Local 1475 made the decision to table Mr. Oltmanns's grievance based on the nonexistent pending litigation, the proposed complaint still does not sufficiently allege that Local 1475's actions were arbitrary, discriminatory, or in bad faith.  We address each in turn.

A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  Air Line Pilots, 499 U.S. at 67, 111 S. Ct. at 1130 (citation omitted).  Likewise, a union has "considerable latitude in its representation of employees."  Schwerman Trucking, 668 F.2d at 1206.  The arbitrariness prong prohibits a union from arbitrarily ignoring a meritorious grievance or processing it in a perfunctory fashion.  Id.  On the other hand, as "the exclusive agent for all employees," the union has the "power to sift out frivolous grievances" and to "abandon processing of a grievance which it determines in good faith to be meritless."  Harris v. Chem. Leaman Tank Lines, Inc., 437 F.2d 167,

---

[6] Mr. Oltmanns now argues it was the Seniority Board that tabled his grievance, but, as noted, this is contrary to the allegations of his complaint.  Regardless, Local 1475 members made up only half of the Seniority Board, so any decision by the Seniority Board is not necessarily attributable to Local 1475.

171 (5th Cir. 1971) (per curiam).[7]  Finally, "neither negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner."  Schwerman Trucking, 668 F.2d at 1206.

Mr. Oltmanns says he plausibly alleges that Local 1475 acted arbitrarily because there was a past port practice that allowed him to obtain seniority.  Even so, when he filed a grievance on that issue, Local 1475 tabled that grievance giving the allegedly false explanation that there was pending litigation.  Assuming the truth of Mr. Oltmanns's allegations, we still see a couple problems with the proposed complaint's allegations of arbitrary action.  First, the proposed complaint fails to allege that Local 1475 knew of the pending litigation justification.  Without this allegation of knowledge on the part of Local 1475, the union could have just as easily considered Mr. Oltmanns's grievance to be frivolous or meritless based on its assessment that the governing documents did not provide for crossover seniority.  This offers a basis by which Local 1475 exercised its power to sift out that grievance without arbitrariness.  See Chem. Leaman Tank Lines, 437 F.2d at 171; see also Schwerman Trucking, 668 F.2d at 1206 (noting that the arbitrariness prong prohibits a union from arbitrarily ignoring or giving perfunctory review to a

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.  Id. at 1209.

14

meritorious grievance). Second, even if we assume Local 1475 knew of the pending litigation justification, the complaint does not allege that Local 1475 knew that justification was false. Instead, Local 1475 could have made an honest mistake and thought there was pending litigation. Such "negligence" or "mistake in judgment" is not sufficient to show arbitrariness, particularly in light of the "considerable latitude" given to unions in representing employees. See Schwerman Trucking, 668 F.2d at 1206; see also Air Line Pilots, 499 U.S. at 67, 111 S. Ct. at 1130 (explaining that a union's actions are arbitrary only if "the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational" (citation omitted)). In light of these shortcomings, the proposed complaint does not sufficiently allege that Local 1475 acted arbitrarily.[8]

Moving to the discrimination prong, a plaintiff must show "discrimination that is intentional, severe, and unrelated to legitimate union objectives." Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 301, 91 S. Ct. 1909, 1925 (1971). Mr. Oltmanns says he alleges a contrast between the application of the crossover seniority rules to other workers with the application of those rules to himself. True. Mr. Oltmanns alleges that,

---

[8] The proposed complaint also alleges in passing that "Local 1475 has failed and refused to assert defenses on behalf of Plaintiff." However, such "allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681, 129 S. Ct. at 1951. For example, the complaint does not explain what defenses might have been available to Local 1475 for it to assert.

15

under the past port practice, other employees have received clerk and checker seniority with Local 1475 based on deck and dockmen hours, but that "Mr. Oltmanns has not been afforded that right." However, nowhere does the proposed complaint allege that such discrimination was intentional. Intention is required for this claim, and without an allegation of intention, the proposed complaint does not adequately allege discrimination in violation of the duty of fair representation. See id.

Third, to demonstrate bad faith, a plaintiff must show "fraud, deceitful action or dishonest conduct." Id. at 299, 91 S. Ct. at 1924. We are not aware of any published decision from our Court expressly requiring allegations of improper motive under the bad faith prong. But see Jamison v. Air Line Pilots Ass'n, Int'l, 635 F. App'x 647, 653–54 (11th Cir. 2015) (per curiam) (unpublished) (indicating that the bad faith prong requires "improper intent, purpose, or motive"). Nevertheless, all parties here agree that allegations of improper motive are required. The parties rely on cases from outside our circuit, which expressly recognize that point. See, e.g., Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998) ("A union acts in bad faith when it acts with an improper intent, purpose, or motive. Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." (citations omitted)); Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir. 1997) ("Whereas the arbitrariness

16

analysis looks to the objective adequacy of the Union's conduct, the discrimination and bad faith analyses look to the subjective motivation of the Union officials."). This seems a good place to start.  Beyond our sister circuits, it is clear to us that such a showing is required under Supreme Court precedent and our usual understanding of "bad faith."  All of the examples of bad faith conduct identified in Lockridge ("fraud, deceitful action or dishonest conduct") appear to include, as an element, improper motive.  Lockridge, 403 U.S. at 299, 91 S. Ct. at 1924 (quotation marks omitted).  In any event, the typical understanding of bad faith is "[d]ishonesty of belief, purpose, or motive."  Bad Faith, Black's Law Dictionary (11th ed. 2019).  Here, Mr. Oltmanns fails to allege that Local 1475 acted with any sort of improper motive or purpose.  For these reasons, his claim against Local 1475 for breach of its duty of fair representation fails.

## IV.  CONCLUSION

The first amended complaint fails to state a hybrid section 301/fair representation claim because it includes no claim alleging that Georgia Stevedore breached any collective bargaining agreement.  While the proposed second amended complaint adds that claim, it does not sufficiently allege that Local 1475 breached its duty of fair representation.  It therefore fails to allege a viable hybrid section 301/fair representation claim, rendering any amendment futile.  We **AFFIRM** the District Court's rulings in full.

17